IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERANCE DAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:06-cv-1057-WKW |
| | ) |
| CITY OF MONTGOMERY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER

A pretrial hearing was held in this case on March 4, 2008, wherein the following proceedings here held and actions taken:

1.  **PARTIES AND TRIAL COUNSEL:**

    (a) Plaintiff – Terance Dawson; Counsel for Plaintiff – Fred F. Bell (appearance filed on March 11, 2008).

    (b) Defendant – Guinn Timmerman; Counsel for Defendant – Allison H. Highley and Kimberly Owen Fehl, Assistant City Attorneys.

    **COUNSEL APPEARING AT PRETRIAL HEARING:**

    (a) Plaintiff - None (*pro se*)

    (b) Defendant - Allison H. Highley

2.  **JURISDICTION AND VENUE:**

    (a) Jurisdiction – The court has subject matter jurisdiction over plaintiff's claims alleging violations of his Constitutional rights pursuant to 42 U.S.C. §1983, and has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367.

    (b) Venue – Venue is proper under 28 U.S.C § 1391.

3.  **PLEADINGS:**

The following pleadings and amendments were allowed:

    (a)    Complaint

    (b)    Answer

**4.**     **CONTENTIONS OF PARTIES:**

    **a.**     **The Plaintiff:**

The defendant engaged in malicious actions against the plaintiff without reasonable or probable cause. The defendant's actions against the plaintiff were intentional or reckless; extreme and outrageous and caused emotional distress and mental anguish against the plaintiff so severe that no reasonable person could be expected to endure it.

The defendant did willfully, knowingly and with specific intent deprive the plaintiff of his rights to freedom from illegal seizures of his person and effects, and of his rights to freedom from unlawful detention and imprisonment both of which rights are secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

The defendant improperly imprisoned or seized and deprived the plaintiff of his freedom and liberty. The defendant's actions injured the plaintiff to suffer humiliation and mental anguish. The defendant acted maliciously and without probable cause and his action deprived said plaintiff of his constitutional rights and the defendant retaliated against the plaintiff.

The defendant converted the plaintiff's vehicle in that the actions amounted to a wrongful detention of the vehicle or interference with the plaintiff's use and enjoyment of said vehicle.

On November 27, 2004, around 9:00 p.m. in the City of Montgomery, the plaintiff, driving his automobile, was spotted by Timmerman, a Montgomery City policeman, who was not uniformed driving in an unmarked police vehicle. The defendant, after following the

plaintiff, pulled along side the plaintiff and yelled for the plaintiff to pull over. The plaintiff did not know who the officer was at the time. The defendant held up something at the plaintiff appearing to be a badge. The plaintiff was uncertain as to whether the individual was a policeman or a heckler.

Attempting to do the right thing, the plaintiff drove his vehicle to a lighted area at Kentucky Fried Chicken, located a few yards away. The defendant followed the plaintiff and proceeded into Kentucky Fried Chicken on the outgoing side and pulled his vehicle a small distance from the plaintiff's. The plaintiff opened his vehicle door and attempted to exit the vehicle to use the restroom. The defendant walked across to the plaintiff's vehicle without identifying himself as a police officer and ordered the plaintiff to get back into the car and place his hands on the steering wheel.

At this time the plaintiff's cellular phone went off, the defendant voiced to the plaintiff "you better not answer that phone." The defendant told the plaintiff that if the plaintiff removed his hands from the steering wheel, exited the vehicle or answered the phone, he would arrest him. Plaintiff explained to the defendant that he urgently had to use the restroom and that he (the plaintiff) had a bladder problem. The plaintiff was frightened by the defendant's actions.

Ultimately believing that the defendant was a police officer, the plaintiff asked the defendant what he had done. The defendant screamed in the presence of several customers that the plaintiff was drunk, on dope, on crack and that the plaintiff looked as if he was full of crack. The defendant continued to accuse the plaintiff of being a crack addict. The defendant made the customers who were hanging around leave indicating that it was police business. Without charging the plaintiff or informing his or any violation that plaintiff had allegedly committed, the defendant refused to allow the plaintiff to exit his vehicle or leave.

After detaining the plaintiff about 15 minutes, the defendant turned his back to the plaintiff and called the "DTOC" unit of the City's Police Department. Shortly thereafter, two uniformed police officers from the Montgomery Police Department arrived on the scene. A one liter bottle of coca cola was in the plaintiff's vehicle. The bottle was removed by one of the officers and the contents were smelled. As indicated by the bottle, the contents proved to be the soft drink Coca-Cola.

The uniformed officer (Lewis) advised the plaintiff that because the defendant had called the unit to come to test the plaintiff for drugs, it was the policy of the Police Department that they perform a sobriety test. The plaintiff was frisked and the contents of his pocket checked. Nothing was found on the plaintiff's persons. The uniformed officer reviewed the plaintiff's license and then handed it to the defendant. The plaintiff was administered, as requested by the defendant, a sobriety test; the plaintiff consented to and passed the sobriety test.

Despite not smelling on the plaintiff, his person or in the plaintiff's vehicle drugs and/or alcohol; and despite not seeing any drugs or alcohol in view, the plaintiff was not allowed to leave the scene at this time. The officers asked the plaintiff to search his vehicle. The plaintiff agreed although under duress (in that he was not being allowed to leave). The search of the plaintiff's vehicle did not produce any drugs or alcohol or anything else illegal. After the uniformed police officers had (1) examined the plaintiff, (2) viewed and smelled the substance in plaintiff's car in the coca cola bottle, (3) given the plaintiff a field sobriety test, which he passed, (4) searched him, (5) searched his vehicle and (6) reviewed his driver's license, the uniformed officers determined that there was no reason for the plaintiff to be further detained and indicated that he was free to leave.

The plaintiff got into his vehicle and proceeded to leave when the defendant detained him and told him that he could not drive the vehicle and ordered him to park it. The defendant ordered the plaintiff to park it and confiscated the plaintiff's driver's license and told the plaintiff that if he drove the vehicle, he would arrest him for being intoxicated. Plaintiff asked the other two uniformed officers who had previously indicated that he could leave if he could leave. The uniformed officers indicated to the plaintiff that because it was the defendant's stop they could not interfere with his decision, and stated that the plaintiff should comply with the defendant's order.

Fearing that he would be arrested, the plaintiff left his vehicle and driver's license behind. Plaintiff was not at any time of the events alleged in the complaint, or at any time, committing any offense against the ordinances of the City or against the statutes of the State of Alabama. Plaintiff had not ingested alcohol or drugs; plaintiff does not ingest drugs or alcohol.

The defendant's actions were malicious and without probable cause. The actions of the defendant against the plaintiff resulted in intentional or reckless conduct by the defendant against the plaintiff. The defendant's actions resulted in the plaintiff urinating on himself, causing mental anguish so severe that no reasonable person could be expected to endure it. The defendant's actions against the plaintiff were intentional or reckless and caused the plaintiff emotional distress and mental anguish so severe that no reasonable person could be expected to endure it.

The defendant converted the plaintiff's vehicle in that his actions amounted to a wrongful detention of the vehicle or interference with the plaintiff's use and enjoyment of said vehicle. The plaintiff was unable to legally drive his vehicle until November 28, 2007.

The plaintiff was not allowed to take his vehicle home. The plaintiff had to procure a duplicate driver's license.

There were no weapons found, no alcohol or illegal drugs found on the plaintiff or in his vehicle. The Fourth Amendment to the U.S. Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Defendant Timmerman willfully, knowingly and with specific intent, deprived the plaintiff of his rights to freedom from illegal seizures of his person and effects, and of his rights to freedom from unlawful detention and imprisonment, both of which rights are secured by the Fourth and Fourteenth Amendment to the Constitution of the United States.

    **b.**    **The Defendant:**

        (i)    <u>The Complaint Should be Amended</u>

Plaintiff has only argued his claims of illegal seizure and imprisonment. However, it should be noted that in his sworn deposition, plaintiff testified that he consented to searches of his person and vehicle, and in fact "encouraged" officers to search his vehicle. (Doc. # 30, at 4). He also testified that nothing was seized from him during the stop. (Doc. # 30, at 5.)

The only issues remaining are whether plaintiff had clearly established constitutional rights that were violated: (a) when Officer Timmerman disallowed plaintiff to exit his vehicle or talk on the phone during the traffic stop; and/or (b) when Officer Timmerman disallowed plaintiff to drive his vehicle home under the circumstances.

Also, on the issue of damages, plaintiff's demands have changed since his initial Complaint. Plaintiff does not claim "specific money damages," stating that he seeks damages "for constitutional violations, and for mental anguish and emotional distress."  (Doc. # 30-9, Interrogatory 9 and response thereto).

(ii)   Claims Against Officer Timmerman

Defendant Timmerman is shielded from liability on all counts against him by qualified immunity and discretionary function immunity. Furthermore, defendant Timmerman did not violate plaintiff's Constitutional rights.  Notwithstanding, defendant Timmerman is statutorily shielded from tort liability arising from acts committed while performing discretionary functions within the scope of his law enforcement duties.

At all times relevant, defendant Timmerman engaged in a discretionary function, by pursuing a legitimate job-related function through means within his power to utilize. Defendant Timmerman observed a vehicle driving erratically in a manner consistent with a driver under the influence. This personal observation created probable cause, or arguable probable cause, to believe a crime was being committed.

The seizure in this case was less intrusive than a traditional arrest.  It was limited in duration to only the time it took to investigate plaintiff's ability to drive safely, and at the end of the encounter plaintiff was free to go. In the interest of public safety, plaintiff was

told to arrange for other transportation home by calling someone with his cellular phone and was offered a ride home (which he declined). Further, when plaintiff encouraged officers to search him and the car, the encounter was converted to a consensual one, which should be considered in determining reasonableness. That plaintiff was not cited for any offense is not dispositive with regard to the validity of the seizure.

Plaintiff has not shown a constitutional right that was clearly established at the time of the violation. Plaintiff cannot show a clearly established precedent that a police officer cannot order a citizen to get another ride home where his personal observations and professional experience lead him to believe that the citizen cannot safely operate a motor vehicle. The Fourth Amendment only guarantees against unreasonable seizures. The seizures in this case were reasonable and therefore permissible under the Constitution.

As to plaintiff's Fourth Amendment claims, defendant incorporates by reference his arguments contained in Defendant's Brief in Support of Motion for Summary Judgment (Doc. # 30) as if set forth fully herein.

5. **STIPULATIONS BY AND BETWEEN THE PARTIES:**

(a)     This Court has jurisdiction over these parties and claims. Venue in the Middle District of Alabama is proper.

(b)     At all times relevant, defendant Timmerman was a sworn police officer employed by defendant City of Montgomery, and defendant

        Timmerman performed all acts complained of under color of law.

(c)     On November 26, 2004, plaintiff Dawson was pulled over by defendant Timmerman, who was not in uniform and was driving an unmarked car.

(d)     Defendant Timmerman pulled alongside plaintiff's car, displayed his badge, and told plaintiff to pull over.

(e)     Plaintiff then pulled into the parking lot of Kentucky Fried Chicken and defendant Timmerman parked close by.

(f)     Plaintiff then attempted to exit his vehicle and was told by defendant Timmerman to remain in the car with his hands on the steering wheel.

(g)     Plaintiff took his hands off the steering wheel to answer his cellular phone, and was instructed by defendant Timmerman to stay off the phone.

(h)     Plaintiff asked why defendant Timmerman had stopped him, and defendant Timmerman responded that he suspected plaintiff was driving under the influence.

(i)     Shortly thereafter, two uniformed officers arrived at the scene to assist defendant Timmerman.

(j)     One uniformed officer smelled plaintiff's beverage and returned it to plaintiff.

(k)     The uniformed officers asked plaintiff to exit the vehicle, and conducted a pat-down search of plaintiff.

(l)     No alcohol or illegal drugs were found on plaintiff's person, or in plaintiff's vehicle.

(m)     The uniformed officers performed field sobriety tests on plaintiff,

    which plaintiff passed.

  (n) Defendant Timmerman told plaintiff to park his car and find another way home.

  (o) Plaintiff was not arrested or issued any citation.

It is ORDERED that:

1. The jury selection and trial of this case, which is to last one day, is set for **March 24, 2008, at 10:00 a.m.**, in Courtroom 2-E of the Frank M. Johnson, Jr., United States Courthouse Complex, One Church Street, Montgomery, Alabama.

2. The parties shall file any requested voir dire questions, motions in limine fully briefed, and any proposed jury instructions and verdict forms with legal citations thereon, **on or before March 14, 2008**.

3. The parties shall file trial briefs, if any, **on or before March 17, 2008**.

4. Each party shall submit at the time of trial, for use by the court, four copies of the witness list, exhibit list, and notebook of pre-marked exhibits.

5. Each party shall submit a sufficient number of copies of exhibits for each of the jurors and opposing counsel.

6. The parties shall review and comply with the Middle District of Alabama's Order on the E-Government Act.

7. The parties shall notify the court **on or before March 14, 2008**, as to the status of any settlement negotiations.

8. All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order (Doc. # 16) entered by the court on May 29, 2007.

9. The parties have indicated that there are no other disputes at this time. All understandings, agreements, deadlines, and stipulations contained in this Order shall be

binding on all parties unless modified by the court.

    10.    An on the record status conference will be held in Courtroom 2-E on March 19, 2008, at 3 p.m. Counsel shall be fully prepared to discuss all aspects of the case and impending trial.

    DONE this 11th day of March, 2008.

                                  /s/ W. Keith Watkins
                            UNITED STATES DISTRICT JUDGE